# United States Tax Court

158 T.C. No. 9

MICHAEL D. BROWN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11519-20L.                    Filed June 23, 2022.

————

P has a tax liability that exceeds $50 million. In an effort to collect a portion of this unpaid liability, R issued P a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. P timely requested a collection due process (CDP) hearing. In April 2018, at the outset of the CDP hearing, P submitted an offer-in-compromise (OIC). R processed the OIC and forwarded it to a collection specialist for review.

In November 2018 the collection specialist informed P that his file had been closed and that the offer was being returned to him because "[o]ther investigations are pending that may affect the liability sought to be compromised or the grounds upon which it was submitted." During the CDP hearing P urged R to overturn that decision. R concluded that the OIC was correctly returned to P and proceeded to close the CDP case. In August 2020 R issued a notice of determination, and P timely petitioned this Court.

P has filed a Motion for Summary Judgment contending that his OIC was "deemed accepted" by R under I.R.C. § 7122(f). That section provides that an OIC is "deemed to be accepted" if it "is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer." P argues that the rejection

occurred 27 months after his OIC was submitted, i.e., in August 2020, when R issued the notice of determination. R contends that the rejection occurred 7 months after the OIC was submitted, i.e., in November 2018, when the collection specialist returned the OIC to P and closed the file on his offer.

*Held*: P's OIC was "rejected by the Secretary" in November 2018, when the collection specialist closed the file and returned the OIC to P. Because P's OIC was "rejected by the Secretary" within 24 months of submission, it was not deemed accepted under I.R.C. § 7122(f).

*Held, further*, the time during which the IRS Appeals Office in a CDP case reviews the return of an OIC is not included as part of the 24-month "deemed acceptance" period of I.R.C. § 7122(f). *See* Treas. Reg. § 301.7122-1(d)(2); Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106.

———————

*Steven Ray Mather*, for petitioner.

*Kevin W. Coy* and *Jeremy J. Eggerth*, for respondent.

OPINION

LAUBER, *Judge*: In this collection due process (CDP) case, petitioner seeks review of a determination by the Internal Revenue Service (IRS or respondent) to reject an offer-in-compromise (OIC). After the settlement officer (SO) assigned to petitioner's case received the OIC, it was referred to a collection specialist for evaluation. Six months later, the collection specialist returned the OIC to petitioner and closed the file on his offer. Petitioner sought review of that decision during the CDP hearing, but the SO determined that the OIC had correctly been returned because it was no longer processable. The IRS then issued petitioner, on August 12, 2020, a notice of determination sustaining the collection action.

Petitioner has filed a Motion for Summary Judgment contending that his OIC is deemed to have been accepted under section 7122(f).[1] That statute provides that an OIC "shall be deemed to be accepted" if it "is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer." § 7122(f). Petitioner argues that the rejection occurred 27 months after the OIC was submitted, i.e., in August 2020, when the IRS issued the notice of determination closing the CDP case. Respondent contends that the rejection occurred 7 months after the OIC was submitted, i.e., in November 2018, when the IRS returned the OIC to petitioner. Agreeing with respondent on that point, we conclude that the IRS rejected petitioner's OIC within the 24-month period specified in section 7122(f), so that his offer was not "deemed accepted." We will therefore deny petitioner's Motion.

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for the purpose of ruling on petitioner's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in California when he petitioned this Court.

This is the third CDP case petitioner has prosecuted in this Court. *See Brown v. Commissioner* (*Brown IV*), T.C. Memo. 2021-112, *supplementing Brown v. Commissioner* (*Brown II*), T.C. Memo. 2019-121, *aff'd in part, vacated in part, and remanded, Brown v. Commissioner* (*Brown III*), 826 F. App'x 673 (9th Cir. 2020); *Brown v. Commissioner* (*Brown I*), T.C. Memo. 2016-82, *aff'd*, 697 F. App'x 1 (D.C. Cir. 2017). At issue in the previous cases were collection actions relating to petitioner's 2001–2007 and 2014 tax years. This case concerns collection action for petitioner's 2009 and 2010 tax years. Petitioner's total outstanding liability for all years exceeds $50 million. *See Brown II*, 118 T.C.M. (CCH) 260, 261.

On November 9, 2017, in an effort to collect the balance due for 2009 and 2010, the IRS issued petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner timely

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

requested a CDP hearing, checking the box "Offer in Compromise." On April 19, 2018, he submitted Form 656, Offer in Compromise, in which he offered to pay $320,000 in satisfaction of his liabilities for 2009–2010 (and other years).

This was not the first OIC petitioner had submitted to the IRS. In November 2016 he submitted an OIC in which he offered to pay $400,000 in satisfaction of his total outstanding liabilities for all years. *See Brown II*, 118 T.C.M. (CCH) at 261. He submitted that OIC during a CDP hearing, and the SO assigned to the case referred it to the IRS's Centralized Offer in Compromise Unit (COIC unit). *Id.* at 262. In April 2017 the COIC unit returned the offer to petitioner, concluding that it was no longer processable because there was an ongoing IRS investigation of an "abusive tax avoidance transaction" involving petitioner. *Ibid.* The SO thereafter issued a notice of determination, concluding that petitioner's OIC had correctly been returned "because there were other investigations pending . . . that might affect [his] delinquent tax account sought to be compromised." *Ibid.*

In *Brown II* petitioner argued (among other things) that the IRS had not formally "rejected" his OIC within the meaning of section 7122(f). Without a formal rejection, he asserted, the OIC should be deemed to have been accepted under section 7122(f). We found no merit in that argument, holding that the COIC unit "correctly returned petitioner's OIC on April 6, 2017, at which point his OIC was considered closed." *Id.* at 264. We explained that "the 24-month statutory period of automatic acceptance prescribed in section 7122(f) ends when the COIC unit returns a taxpayer's OIC." *Id.* at 263 (citing Internal Revenue Manual (IRM) 8.23.3.1.1.1(6) (Oct. 15, 2014)). Because the COIC unit returned petitioner's offer within the 24-month period, his offer was not "deemed accepted." *Id.* at 264.

In October 2020 the U.S. Court of Appeals for the Ninth Circuit affirmed this part of our decision. The Ninth Circuit ruled that, under section 7122(f), an OIC "will not be deemed to be accepted if the offer is, within the 24-month period, rejected by the [IRS], [or] returned by the [IRS] to the taxpayer as nonprocessable or no longer processable." *Brown III*, 826 F. App'x at 674 (quoting Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106). Petitioner's OIC was "returned" within the 24-month period; the Ninth Circuit accordingly affirmed our conclusion that his offer was not "deemed accepted." *Ibid.*

While litigating these other CDP cases, petitioner submitted the (substantially similar) OIC at issue here. The instant case was assigned to SO James Feist in the IRS Independent Office of Appeals (Appeals) in Tampa, Florida. On March 8, 2018, SO Feist scheduled a telephone conference with petitioner's counsel, which was held on April 12, 2018. Petitioner's counsel indicated that he would be submitting an OIC, which he sent to SO Feist a week later. SO Feist forwarded the offer to the COIC unit, which determined in May 2018 that the offer appeared to be "processable," i.e., that it met IRS formal requirements. Petitioner's offer was then referred to a collection specialist in the IRS's Laguna Niguel branch (Laguna Group).

On November 5, 2018, the Laguna Group issued petitioner a letter informing him that the IRS had "closed [the] file" and was "returning your Form 656, Offer in Compromise" because "[o]ther investigations are pending that may affect the liability sought to be compromised or the grounds upon which it was submitted." The Laguna Group explained: "As of the date of this letter, we are considering your offer closed. Any payments received with your offer or after the date of this letter will be applied to your liability." Attached to the letter was a copy of petitioner's original offer packet, marked "RETURNED."

For roughly a year and a half after receiving that letter, petitioner took the position in the CDP hearing that the Laguna Group had erred in returning his offer. On November 15, 2018, his counsel told SO Feist that the reason given by the collection specialist for rejecting the offer—the pendency of other investigations—was "bogus." On February 22, 2019, petitioner's counsel called SO Feist and requested reconsideration of the Laguna Group's decision. SO Feist replied that "Appeals will maintain jurisdiction of [the] case," but advised that it would be "difficult[] [to] overturn[] the reasons [given by the collection specialist] for the return of [the] OIC." The CDP case then remained open during the pendency of the "other investigations" to which the collection specialist had referred.

On June 23, 2020—more than 24 months after the offer was submitted—petitioner's counsel advanced a new argument in a letter to SO Feist. Petitioner now urged that "only Appeals can make the determination to return the OIC." Because "Appeals did not return the OIC" within 24 months of the offer's submission, petitioner insisted that the OIC was "deemed accepted" under section 7122(f).

Upon reviewing the letter, SO Feist called petitioner's counsel and expressed agreement with the Laguna Group's decision to return the OIC. SO Feist indicated that he intended to close the CDP case unless petitioner wished to propose a different collection alternative. Petitioner did not propose a different collection alternative, and SO Feist proceeded to close the case.

On August 12, 2020, the IRS issued petitioner the notice of determination on which this case is based. The notice of determination concluded that petitioner's OIC was correctly returned by the Laguna Group because of an ongoing IRS investigation. The notice states that, as a result of this investigation, the IRS in February 2019 referred petitioner's information to the U.S. Department of Justice "to reduce the Federal tax debts to judgment."[2]

Petitioner timely petitioned this Court. On July 22, 2021, he filed the instant Motion, contending that the OIC was deemed accepted under section 7122(f). Respondent timely objected to the Motion, and we heard oral argument on March 28, 2022. Further briefing ensued.

## *Discussion*

A.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520. The sole question presented at this stage of the proceedings is whether petitioner's OIC was deemed accepted under section 7122(f). This question is principally one of law, and no material facts are in genuine dispute. We conclude that this issue may be adjudicated summarily.

---

[2] Because the IRS has allegedly referred petitioner's information to the Department of Justice "to reduce the Federal tax debts to judgment," respondent advances the alternative contention that, as of February 2019, the Commissioner was no longer authorized to consider petitioner's OIC. *See* § 7122(a) ("The Secretary may compromise any civil or criminal case . . . *prior to* reference to the Department of Justice for prosecution or defense . . . ." (Emphasis added.)). Given our disposition, we need not address respondent's alternative argument at this stage of the case.

B.    *Analysis*

Section 7122(f) is captioned, "Deemed acceptance of offer not rejected within certain period."  It provides: "Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer."  § 7122(f). We must decide whether petitioner's OIC was "rejected by the Secretary" in November 2018, when the Laguna Group returned the OIC to him, or in August 2020, when Appeals issued the notice of determination sustaining the Laguna Group's decision.

The Secretary has promulgated regulations addressing the compromise of tax liabilities under section 7122.  The regulations provide that "[a]n offer to compromise becomes pending when it is accepted for processing."  Treas. Reg. § 301.7122-1(d)(2).  If the IRS accepts an offer for processing but subsequently determines that it was (or has become) nonprocessable, or that the offer is nonreviewable for other reasons, the offer may be returned to the taxpayer.  *Ibid.*  "An offer returned following acceptance for processing is deemed pending only for the period between the date the offer is accepted for processing and the date the IRS returns the offer to the taxpayer."  *Ibid.*

The regulations provide that a taxpayer must submit an OIC "according to the procedures, and in the form and manner, prescribed by the Secretary."  *Id.* para. (d)(1).  The Secretary has prescribed the relevant procedures in Rev. Proc. 2003-71, 2003-2 C.B. 517, and in Notice 2006-68, *supra*, which explains the "deemed acceptance" rules of section 7122(f).  The Notice states that "[a]n offer will not be deemed to be accepted if the offer is, within the 24-month period, rejected by the Service [or] returned by the Service as nonprocessable or no longer processable." § 1.07, 2006-2 C.B. at 106.  If a taxpayer requests review of a rejection, "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period." *Ibid.*

Petitioner submitted his OIC to SO Feist, the Appeals officer handling the CDP case.  In May 2018 SO Feist sent the offer to the COIC unit, which concluded that the offer appeared to be processable.  The COIC unit then referred the offer to a collection specialist in the Laguna Group.  Six months later, on November 5, 2018, the Laguna Group determined that the OIC was no longer processable because of an ongoing investigation "that may affect the liability sought to be compromised."

The Laguna Group accordingly returned the offer to petitioner and informed him that it had closed its file on his offer. Enclosed with that letter was a physical copy of petitioner's OIC, marked "RETURNED."

For purposes of section 7122(f), petitioner's OIC was "deemed pending only for the period between the date the offer [wa]s accepted for processing and the date the IRS return[ed] the offer to [him]." Treas. Reg. § 301.7122-1(d)(2). His offer was accepted for processing in May 2018, but it was returned six months later in November 2018. *See* Rev. Proc. 2003-71, § 5.06, 2003-2 C.B. at 518 ("An offer to compromise is considered to be returned on the day the Service mails, or personally delivers, a written letter to the taxpayer informing the taxpayer of the decision to return the offer."). Because the IRS returned petitioner's OIC within 24 months of submission, his OIC was not deemed accepted under section 7122(f).

The outcome is the same under the regulatory provisions governing rejections outside the CDP context. A rejection of an OIC ordinarily includes a "written notice" explaining the decision and providing the right to seek review in Appeals. *See* Treas. Reg. § 301.7122-1(f)(1). But it is the initial rejection, not the final determination by Appeals, that is relevant for purposes of section 7122(f). The initial rejection terminates the 24-month period "because the offer was rejected by the Service within the meaning of section 7122(f) prior to consideration of the offer by the Office of Appeals." Notice 2006-68, § 1.07, 2006-2 C.B. at 106. In other words, "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period." *Ibid.*

After receiving the Laguna Group's decision, petitioner asserted that the basis for its decision was "bogus" and should be overturned by SO Feist. But the time SO Feist spent evaluating petitioner's position is not taken into account under section 7122(f). The OIC had already been returned (i.e., "rejected by the Secretary" or his delegate), and the period during which Appeals conducted its review "is not included as part of the 24-month period." *See* §§ 7122(f), 7701(a)(11)(B), (12)(A); Notice 2006-68, § 1.07, 2006-2 C.B. at 106.

Petitioner acknowledges that, under Treasury Regulation § 301.7122-1 and Notice 2006-68, the 24-month period would ordinarily have terminated in November 2018, when the Laguna Group returned the OIC to him. He does not challenge the validity of these authorities; rather, he asserts that they are inapplicable to "CDP OICs." When an

OIC is submitted in a CDP case, petitioner says, "only an Appeals notice of determination can be the event that terminates" the 24-month period.

Petitioner floated a similar theory in *Brown II* and *Brown III*, but this Court and the Ninth Circuit both demurred to his argument. In that case (as in this) petitioner submitted his OIC to the SO who conducted the CDP hearing. *See Brown II*, 118 T.C.M. (CCH) at 261–62. The SO forwarded the offer to the COIC unit, which promptly returned the offer to petitioner because an ongoing IRS investigation "might affect [the] delinquent tax account sought to be compromised." *Id.* at 262. Petitioner urged that this action did not amount to a "rejection" within the meaning of section 7122(f), so that his OIC was "deemed accepted."

We dismissed that argument in *Brown II*, ruling that "the 24-month statutory period of automatic acceptance prescribed in section 7122(f) ends when the COIC unit returns a taxpayer's OIC." *Id.* at 263 (citing IRM 8.23.3.1.1.1(6)). Petitioner appealed, but the Ninth Circuit in *Brown III* affirmed that portion of our decision. It ruled that "an offer 'will not be deemed to be accepted if the offer is, within the 24-month period, rejected by the [IRS], [or] returned by the [IRS].'" *Brown III*, 826 F. App'x at 674 (quoting Notice 2006-68, § 1.07, 2006-2 C.B. at 106). That is precisely what happened, again, in the instant case.

Petitioner seeks to distinguish *Brown II* and *Brown III* on the theory that the COIC unit's return letter and the SO's notice of determination were both issued there within a span of two years. We do not see how this distinction helps petitioner. This Court unambiguously ruled in *Brown II* that the statutory 24-month period "ends when the COIC unit returns a taxpayer's OIC." *Brown II*, 118 T.C.M. (CCH) at 263. The Ninth Circuit likewise ruled that an offer is not deemed accepted if it is "returned by the [IRS]" within the 24-month period. *Brown III*, 826 F. App'x at 674. Both courts clearly identified the terminating event as the COIC unit's return of the offer, not the SO's notice of determination. Indeed, neither court could possibly have been referring to the notice of determination: In that notice the SO did not return the OIC, but rather sustained the correctness of the COIC unit's prior action in returning the OIC.

Petitioner invites us to reconsider our holding in *Brown II*, asserting that the Laguna Group's decision to return the OIC was "procedurally meaningless" and that "CDP OICs" are governed exclusively by section 6330(c), which requires a final determination by Appeals. We decline to reconsider our holding in *Brown II*, and we are not at liberty to

"reconsider" the Ninth Circuit's ruling in *Brown III*. Precedent apart, petitioner's argument is meritless because it confuses two kinds of finality: the administrative return of an OIC, which terminates the 24-month period under section 7122(f), and the notice of determination, which terminates the CDP proceeding under section 6330.

Under section 6330(c) a taxpayer in a CDP case may raise numerous issues, including underlying liability challenges, spousal defenses, the propriety of the collection action, and the availability of collection alternatives. *See* § 6330(c)(2). The SO must consider all issues raised by the taxpayer, and his ultimate decision on each point makes up the "determination." *See* § 6330(c)(3). That "determination" can then be reviewed in this Court. *See* § 6330(d)(1).

The Laguna Group's November 2018 letter returning petitioner's offer was a "rejection" for purposes of section 7122(f). As we ruled in *Brown II* and as the Ninth Circuit ruled in *Brown III*, the return of an OIC that is no longer processable is a form of rejection, albeit based on procedural grounds rather than substantive evaluation of the offer's merits. But the Laguna Group's decision to return the OIC was not final: It was up to SO Feist to decide whether the Laguna Group had acted properly. During the CDP hearing petitioner was free to submit facts and argument urging that the Laguna Group had erred in returning the offer. Petitioner did so by contending that the ground the Laguna Group had relied on—the pendency of other IRS investigations—was "bogus."

SO Feist evaluated petitioner's argument, found it meritless, and sustained the Laguna Group's decision to return the OIC. Under section 6330(d) we have jurisdiction to review SO Feist's ultimate conclusions as embodied in the notice of determination, not the Laguna Group's initial decision to return the offer. But the fact that the Laguna Group's decision was not "final" for purposes of judicial review does not prevent it from being a "return" or a "rejection" under section 7122(f), for the limited purpose of terminating the 24-month "deemed acceptance" period.[3]

---

[3] Petitioner errs in relying on a section of the IRM captioned "TIPRA Statute Responsibilities." *See* IRM 8.22.7.10.1.3 (Sept. 23, 2014). As in effect when petitioner submitted his offer, this section instructed SOs that an OIC would be deemed accepted only if it was "not rejected, returned or withdrawn within 24 months of submission." *Id.* 8.22.7.10.1.3(1). Petitioner does not dispute that his OIC was "returned" within 24 months of submission. That IRM section currently provides that "[c]ertain dispositions

In essence petitioner contends that section 6330 overrides sub silentio the outcome dictated by section 7122(f), asserting that the notice of determination is the "critical event" under section 7122(f) and that "there is no real authority that suggests a contrary result." This assertion ignores Treasury Regulation § 301.7122-1, *Brown II*, *Brown III*, Notice 2006-68, and the IRM provisions discussed previously. These authorities confirm that the IRS's initial decision to return an OIC is the event that terminates the 24-month "deemed acceptance" period. Petitioner has cited no authority for the proposition that section 7122(f) has a different meaning when the offer is made in a CDP context.

Our conclusion is fully consistent with the statute's purpose. Section 7122(f) was added to the Code as part of the Tax Increase Prevention and Reconciliation Act of 2005 (TIPRA), Pub. L. No. 109-222, § 509(b)(2), 120 Stat. 345, 363 (2006). In enacting section 7122(f) Congress expressed its expectation that the IRS would respond fairly promptly to OICs, rather than letting them sit in a pile for two years or more. *See* H.R. Rep. No. 109-455, at 234 (2006) (Conf. Rep.), *reprinted in* 2006 U.S.C.C.A.N. 234, 421. Here the IRS was faithful to Congress' mandate: It took prompt action on petitioner's OIC, returning the offer to him within six months and explaining why his offer was no longer processable.

Because petitioner's OIC was submitted in connection with a CDP proceeding, he had the opportunity to ask SO Feist to review the Laguna Group's decision.[4] And SO Feist did not complete his review of the entire case within 24 months. But there is no reason to believe that Congress,

---

made by Collection during consideration of a CDP OIC will result in the closing of the TIPRA 24-month period." IRM 8.22.7.10.1.3(5) (Aug. 26, 2020). These dispositions include the return of the offer, the mandatory withdrawal of an offer, and an erroneously issued rejection letter. The IRM says that these dispositions "will close the TIPRA 24-month period even if determined by Appeals to have been erroneously made." *Ibid.* This current IRM provision is likewise consistent with Notice 2006-68, § 1.07, 2006-2 C.B. at 106, which states that "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period."

[4] Outside the CDP context, if the IRS returns an OIC as nonprocessable, the taxpayer is not entitled to Appeals review of that action. *See* Treas. Reg. § 301.7122-1(f)(5)(ii). But the taxpayer *is* entitled to Appeals review if his OIC is returned during a CDP hearing. *See Mason v. Commissioner*, T.C. Memo. 2021-64, 121 T.C.M. (CCH) 1485, 1490 (noting that, in CDP cases, "we can review a determination to reject an OIC on grounds that would have triggered a *return* if the OIC had been submitted outside the CDP hearing process").

in enacting section 7122(f), intended to place a limit on the duration of the CDP proceeding, i.e., on the length of time a taxpayer can negotiate with Appeals before a notice of determination is issued. *See* Treas. Reg. § 301.6320-1(e)(3)(ii), Q&A E-9 (noting that Appeals has no deadline to issue a notice of determination).

It is not uncommon for taxpayers to submit an OIC (as petitioner did here) at the outset of a CDP hearing. If that offer is returned by the COIC unit, the taxpayer may urge the SO to reverse that decision, but the taxpayer may also pursue other options. He might challenge his underlying liability, request "innocent spouse" relief, propose an installment agreement, or seek withdrawal of a tax lien filing. These issues may require the SO to evaluate multiple submissions of financial information, seek assistance from the IRS Examination Division, and/or consult with the IRS's Cincinnati Centralized Innocent Spouse Operation. Even absent a pandemic, these events may consume a considerable amount of time and possibly prolong the CDP case beyond 24 months. The Secretary recognized this possibility in Notice 2006-68, § 1.07, 2006-2 C.B. at 106, directing that "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period."

Acceptance of petitioner's argument—that Appeals must issue the notice of determination within 24 months after an OIC is submitted—could place the SO in a dilemma. If the SO by that deadline has not resolved every issue raised by the taxpayer, the SO could be motivated to issue a notice of determination prematurely, lest the OIC be "deemed accepted." But doing so would risk reversal and remand for failure to address all "relevant issue[s] relating to the unpaid tax or the proposed [collection action]." § 6330(c)(2)(A). That would prolong the case even further, defying logic and undermining Congress' intent.[5]

For all these reasons, we hold that the OIC petitioner submitted in May 2018 was not "deemed accepted" under section 7122(f). Petitioner's arguments to the contrary are at odds with judicial precedent and derive no support from legal authority, policy considerations, or

---

[5] Acceptance of petitioner's theory could also invite gamesmanship and abuse. An improperly motivated taxpayer could submit an OIC at the outset of a CDP case and then engage in delay tactics in an effort to extend the proceeding to a date beyond the 24th month. It is obvious that Congress did not wish to encourage this type of behavior. *Cf.* § 7122(g) (authorizing the IRS to ignore "frivolous submissions").

common sense. His Motion for Summary Judgment will therefore be denied.

To reflect the foregoing,

*An appropriate order will be issued.*